IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| BRUCE A. ESTES, | ) | |
|---|---|---|
| Plaintiff, | ) | Civil Action No. 7:18-cv-602 |
| | ) | |
| v. | ) | |
| | ) | |
| VIRGINIA DEPARTMENT OF | ) | By: Elizabeth K. Dillon |
| CORRECTIONS, *et al.*, | ) | United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Bruce A. Estes, a Virginia inmate proceeding *pro se*, filed a civil action pursuant to 42 U.S.C. § 1983. Estes, who is a practicing Orthodox Jew, challenges a variety of Virginia Department of Corrections ("VDOC") policies, or their erroneous implementation as to him, as violative of his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq.*, and his equal protection rights under the Fourteenth Amendment.[1] (Dkt. No. 1.)

Pending before the court is defendants' motion to dismiss, (Dkt. No. 13), in which they seek dismissal of all claims except Claim 1c against defendant D. Felts, which is a claim that Felts refused to permit Estes to take his religious property with him when he temporarily transferred to another institution for a medical appointment.

In his opposition to the motion to dismiss, Estes indicates that he is voluntarily withdrawing certain claims and dismissing certain defendants. Specifically, he is withdrawing Claims 1c, 1d, 2c, 2d, and 2g, and is dismissing as defendants VDOC, River North Correctional

---

[1] Estes's complaint also suggests that defendants have violated Virginia's Religious Freedom Restoration Act ("RFRA"), Va. Code Ann. § 57-2.02. As defendants correctly note, however, Virginia RFRA specifically exempts the Department of Corrections from the definition of "government entity." Va. Code Ann. § 57-2.02(A). Thus, Estes's claims under RFRA are not cognizable.

Center ("River North"), and D. Felts. (Opp'n 34, 35, Dkt. No. 20.)[2] The court will dismiss those claims and those defendants in its accompanying order.

As to the remaining claims and defendants, the motion to dismiss is fully briefed and is ripe for disposition. For the reasons discussed herein, the court will grant the motion in part and deny it in part. Specifically, the motion will be denied as to Claim 1a; it will be granted as to all other remaining claims, which will be dismissed without prejudice. The court also will deny without prejudice Estes's motions for preliminary injunction, and it will deny as moot Estes's motion to compel.

## I. BACKGROUND

Estes's complaint asserts that he is a practicing Orthodox Jew and is sincere in his religious beliefs. He explains that he has been incarcerated at River North since 2013 and that both VDOC and River North have imposed "substantial burdens" on his religious exercise, pointing to a number of different rules, policies, or actions. In addition to VDOC and River North (both now dismissed), he names as defendants seven individuals, all of whom he sues only in their official capacities.

As defendants did, the court construes Estes's complaint as asserting the below-listed claims. The list below does not include the five claims that Estes has voluntarily withdrawn (Claims 1c, 1d, 2c, 2d, and 2g); but, for clarity, the court uses the same numbers and letters to refer to his claims as were used in the motion to dismiss and Estes's opposition. The first three claims are brought under RLUIPA; the other four under 42 U.S.C. § 1983.

---

[2] Page numbers throughout are to the pages numbers assigned by the court's CM/ECF system.

**Claim 1a:** Defendants impose a substantial burden on Estes's religious exercise by restricting when he may wear a yarmulke (a head covering) and tzitzit (a four-cornered, fringed undergarment). (Compl. ¶¶ 2, 24, 37.)

**Claim 1b:** Defendants impose a substantial burden on Estes's religious exercise by not allowing a reasonable amount of time for religious observances of Yom Kippur and Rosh Hashanah, thereby preventing Estes from fulfilling his religious obligations. (Compl. ¶ 38.)

**Claim 1e:** Defendants impose a substantial burden on Estes's religious exercise by only cremating offenders who die indigent and without family, rather than burying them. (Compl. ¶ 42.)

**Claim 2a:** Defendants violate Estes's equal protection rights under the Fourteenth Amendment by allowing female offenders to purchase three religious head coverings while restricting male offenders to purchasing one. (Compl. ¶ 46.)

**Claim 2b:** Defendants violate Estes's equal protection rights under the Fourteenth Amendment by allowing a "de facto policy change" that allows female offenders to wear religious head coverings at all times in all places while male offenders are not allowed to wear head coverings "in most places." (Compl. ¶ 47.)

**Claim 2e:** Defendants violate Estes's equal protection rights under the Fourteenth Amendment by allowing certain individualized donations to offenders of other religious groups while denying Orthodox Jewish offenders the same benefit. (Compl. ¶ 50.)

**Claim 2f:** Defendants violate Estes's equal protection rights under the Fourteenth Amendment by providing religious materials for other faiths, especially Christians and Muslims, while requiring Orthodox Jewish offenders to purchase their religious materials. (Compl. ¶ 51.)

His complaint also contains approximately one hundred pages of exhibits, including copies of VDOC policies, documentation concerning the required practices of his religion, and

documentation concerning his exhaustion of administrative remedies as to his various claims. (*See* Dkt. Nos. 1-1 & 1-2.) His complaint does not seek damages;[3] instead, he asks only for declaratory and injunctive relief, as well as "full costs and fees arising out of this litigation and all other such relief as the interests of justice may require." (Compl. 16–18.)

## II. DISCUSSION

### A. Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302. *Pro se* complaints are afforded a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006).

### B. RLUIPA Claims

Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that" the

---

[3] As already noted, Estes names the defendants only in their official capacities. The Eleventh Amendment bars a recovery of damages under RLUIPA against state officials sued in their official capacities. *Madison v. Virginia*, 474 F.3d 118, 133 (4th Cir. 2006). Likewise, a Section 1983 plaintiff cannot recover damages against state officials acting in their official capacities. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

burden is "in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that . . . interest." 42 U.S.C. § 2000cc-1(a).

A substantial burden on religious exercise occurs when a government, through act or omission, "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)). The plaintiff bears the initial burden of establishing that the government's actions substantially burdened his exercise of religion. *See, e.g.*, *Krieger v. Brown*, 496 F. App'x 322, 324 (4th Cir. 2012); *Adkins v. Kaspar*, 393 F.3d 559, 567 n.32 (5th Cir. 2004); *Civil Liberties for Urban Believers v. Chicago*, 342 F.3d 752, 760 (7th Cir. 2003). In conducting the substantial burden inquiry, the plaintiff "is not required . . . to prove that the exercise at issue is required by or essential to his religion." *Krieger*, 496 F. App'x at 325 (citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005)). Nevertheless, "at a minimum the substantial burden test requires that a . . . plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice." *Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir. 2007) (citing *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)), *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011). Also, no substantial burden occurs if the government action merely makes the "religious exercise more expensive or difficult," but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion. *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 739 (6th Cir. 2007).

Once a plaintiff produces *prima facie* evidence to support the claim that the challenged practice or law substantially burdens the plaintiff's exercise of religion, the government bears the burden of persuasion on whether the practice or law is the least restrictive means of furthering a

5

compelling governmental interest. 42 U.S.C. § 2000cc-2(b). "The least-restrictive-means standard is exceptionally demanding, and it requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Jehovah v. Clarke*, 798 F.3d 169, 177 (4th Cir. 2015) (quoting *Holt v. Hobbs*, 574 U.S. 352, 364–65 (2015)) (internal quotation marks and citations omitted). "If a less restrictive means is available for the Government to achieve its goals, the Government must use it." *Holt*, 574 U.S. at 365 (citations and alterations omitted).

In evaluating whether the least-restrictive means test is satisfied, courts must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter*, 544 U.S. at 723 (citations omitted) (internal quotation marks omitted). "RLUIPA . . . is not meant to elevate accommodation of religious observances over the institutional need to maintain good order, security, and discipline or to control costs." *Baranowski v. Hart*, 486 F.3d 112, 125 (5th Cir. 2007) (citation omitted). However, courts should not "mechanically accept" prison administrators' rationale for restricting religious exercise. *Lovelace*, 472 F.3d at 190.

**1. RLUIPA Claim Regarding Wearing of a Yarmulke and Tzitzit (Claim 1a)**

Defendants seek dismissal of Claim 1a on the ground that plaintiff has failed to "allege how much restriction is placed upon him," and because his assertion that he is restricted from wearing his yarmulke and tzitzit is "vague." (Mem. Supp. Mot. Dismiss 8–9, Dkt. No. 14.)

Estes's complaint alleges that that his faith requires him to wear the yarmulke "at all times" and that he "must not walk more than more than four cubits (about six feet) or a single holy word be uttered (*e.g.*, prayer or Torah study) while being bare-headed." Similarly, he claims that his faith also requires him to wear the tzitzit "at all times of day" and not to "walk

6

more than four cubits" during daylight hours without wearing one. (Compl. ¶¶ 21, 22, 25.) Defendants are correct that Estes's claim is not extremely detailed as to the specific nature of the restriction imposed, but his complaint alleges that that he is "prohibited from wearing" those religious garments, (Compl. ¶ 2), which appears to be an allegation that he may not wear the garments at all. In discussing his equal protection claim based on similar facts, Estes alleges that he "is not allowed to wear his head-covering in most places" within the prison. (Compl. ¶ 48.)[4]

Although Estes's complaint could be more detailed as to the specific nature of the restriction, his allegations are sufficient to plausibly state a claim under RLUIPA. Thus, at this juncture the claim may proceed. *See McLin v. VA Dep't of Corr.*, No. 7:19cv00247, 2020 WL 448260 (W.D. Va. Jan. 28, 2020) (allowing claims to proceed against defendants with some personal involvement in decision to deny plaintiff the ability to wear his yarmulke and tzitzit); *Browning v. Seifert*, No. 1:13CV23, 2015 WL 1280948, at *12–13 (N.D. W. Va. Mar. 20, 2015) (denying summary judgment for defendants on similar claim where defendants failed to show that the prohibition on defendant wearing his yarmulke was the least restrictive means of furthering the prison's interest in safety").

### 2. RLUIPA Claim Regarding Amount of Time Given for Yom Kippur and Rosh Hashanah (Claim 1b)

In claim 1b, Estes contends that River North does not provide sufficient time for services for the Jewish holy days of Yom Kippur and Rosh Hashanah. Specifically, he alleges that only an hour is allotted for those religious observances, "which does not allow the Plaintiff to fulfill his religious obligations." (Compl. ¶ 38.) He does not provide any detail as to what those

---

[4] In other documents, including his motions for preliminary injunction and his opposition to the motion to dismiss, Estes indicates that defendants' policy (which apparently has changed over time) is more nuanced and does allow the wearing of these garments to a limited degree.

obligations are, other to say that those holy days "involve extensive liturgies," (Compl ¶ 26), nor does he explain how having limited time to observe those days substantially burdens his religion.

Instead, most of the facts he cites in support of this claim concern that other religions are permitted to have longer services at other times in the year or that longer services are permitted at other prisons. As defendants note, regardless of what occurs at other prisons or for other religions, plaintiff must show that defendants have substantially burdened the practice of his religion in order to state a RLUIPA claim. The allegations in his complaint currently do not allege facts sufficient to state a plausible claim.

In his opposition and a declaration attached thereto, Estes offers additional detail concerning this claim. (Opp'n 12–14.) Critically, though, he does not include those allegations in the complaint itself, and "[i]t is well-established that the parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th Cir. 2013). Accordingly, the court will grant the motion to dismiss this claim, but without prejudice, and will grant Estes the opportunity to file an amended complaint concerning this claim, if he so chooses.[5]

### 3. RLUIPA Claim Regarding Cremation of Indigent Offenders Who Die Without Family (Claim 1e)

In Claim 1e, Estes challenges VDOC's policy of cremating indigent offenders who die without family while in custody. Defendants seek dismissal of this claim on the grounds that it rests "entirely on speculation." (Mem. Supp. Mot. Dismiss 10.) Although defendants cite to

---

[5] The court could consider the opposition as a motion to amend and the attached declaration as a supplemental complaint and give defendants the opportunity to respond to it separately. But the court believes that the clearer and more efficient course in handling amendment is to have a single document that constitutes Estes's amended complaint. Estes will therefore have the opportunity to file an amended complaint that includes any allegations from his declaration that he believes are pertinent to this claim and to the other claims that the court is dismissing without prejudice.

*Iqbal* and *Twombly* for support, it appears to the court that the argument defendants makes is more properly construed as an argument that Estes lacks standing to pursue this claim.[6] As the Fourth Circuit has explained, to have standing under Article III, a plaintiff must establish that he has an "injury-in-fact."

> "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, —— U.S. ——–, 136 S. Ct. 1540, 1548, 194 L.Ed.2d 635 (2016) (quoting *Lujan*, 504 U.S. at 560, 112 S. Ct. 2130). And while it is true "that threatened rather than actual injury can satisfy Article III standing requirements," *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 160 (4th Cir. 2000) (en banc), not all threatened injuries constitute an injury-in-fact. Rather, as the Supreme Court has "emphasized repeatedly," an injury-in-fact "must be concrete in both a qualitative and temporal sense." *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S. Ct. 1717, 109 L.Ed.2d 135 (1990). "The complainant must allege an injury to himself that is distinct and palpable, as opposed to merely abstract." *Id.* (internal citations and quotations omitted). "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes." *Lujan*, 504 U.S. at 564–65, n. 2, 112 S. Ct. 2130.

*Beck v. McDonald*, 848 F.3d 262, 270–71 (4th Cir. 2017).

Here, as defendants note, Estes seeks to challenge a policy that will affect him only *if* he dies in custody, indigent, and without family, *and* while VDOC's current policy is in effect. In his complaint, he does not allege that he is indigent or without family now, nor does he allege that he is aged or infirm or any other circumstance suggesting that any injury from this policy is anything other than speculative.

---

[6] In his opposition, Estes interprets their argument as challenging the ripeness of his claims, (Opp'n 15–16), which involves a similar inquiry.

Again, in contrast to his complaint, his opposition and declaration attached thereto contain such allegations. (*See* Opp'n 18 (noting that he is indigent, setting forth his age and aspects of his health, discussing his family situation, etc.).) But these documents do not amend his complaint. *See S. Walk at Broadlands Homeowner's Ass'n*, 713 F.3d at 184–85. As with Claim 1b, the court will dismiss this claim without prejudice based on the complaint as it stands, but Estes will be granted leave to amend his complaint to add the detail set forth in his opposition and declaration.

### 4. RLUIPA Claims—Lack of Personal Involvement

Defendants also correctly note that Estes has failed to identify any specific actions or omissions by any individual defendant that he contends violated his RLUIPA rights. In his opposition, Estes points out that he has identified the defendants by their position and he groups them together, stating that they are the "personnel responsible for shaping and implementing VADOC policy, including" the "decisions" he challenges.

In order to obtain the injunctive relief he seeks, it is appropriate to allow the claims against those who issued the challenged policies/decisions (or those who decided how those policies would apply to Estes). *See Lovelace*, 472 F.3d at 193–94. Based on the allegations in the complaint, it appears that Claim 1a challenges a VDOC-wide decision and thus that Clarke would be a proper defendant for purposes of obtaining injunctive relief as to that claim.

As to the other claims, it is not entirely clear, looking solely at the allegations in the complaint, which defendants Estes alleges are responsible for which decisions. To be sure, the documents attached to Estes's complaint—which include a number of grievance-related documents or other attached documentation—reference specific defendants as making some decisions and contain and grievances answered by certain defendants. (*See e.g.*, Dkt. No. 1-1 at 33–34, 40; Dkt. No. 1-2 at 31.) But the court will not hunt through those documents to

10

determine which defendants were involved in what decisions, especially when Estes has failed to include such allegations directly in his complaint. Accordingly, in his amended complaint, Estes should identify, as best he can, the specific defendants who are responsible for each decision or policy that he challenges.

## C. Equal Protection Claims

### 1. Lack of Personal Involvement

Estes's remaining four claims (Claims 2a, 2b, 2e, and 2f) are all 42 U.S.C. § 1983 claims alleging a violation of his equal protection rights. Defendants first seek dismissal of all of these claims on the same ground just discussed: Estes fails to identify with particularity which individual defendant should be held liable for what decisions or policies. As noted by defendants, a claim under § 1983 requires a plaintiff to show direct personal involvement by each particular defendant. Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). Thus, a § 1983 claim requires factual detail about each defendant's personal involvement. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights and affirming dismissal of claim where plaintiff did not allege personal involvement by defendant) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

Again, while a challenge to a VDOC policy issued by Clarke could give rise to liability on his part, and a policy or decision made by the Warden at River North could give rise to liability on his part, Estes's complaint does not clearly allege who was involved in what decisions as to the equal protection claims. In any event, because the court is dismissing all of his equal protection claims and granting leave to amend, Estes will be given an opportunity to

11

specify which defendant or defendants are responsible for the decisions or policies challenged in any claims he chooses to include in his amended complaint.

### 2. Equal Protection Claims—Generally

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause thus directs that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1982).

To prove an equal protection claim, a litigant "must first demonstrate that he has been treated differently from others with whom he is similarly situated." *Veney v. Wyche,* 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir. 2001)). Two groups of persons are "similarly situated" only if they "are similar in all aspects relevant to attaining the legitimate objectives" of the policy or legislation. *Van Der Linde Housing, Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th Cir. 2007).

Once such a showing is made, then the court will determine "whether the disparity in treatment can be justified under the requisite level of scrutiny." *Veney*, 293 F.3d at 731 (quoting *Morrison*, 239 F.3d at 654).

### 3. Equal Protection Claims Based on Differential Treatment of Males and Females with Respect to Head Coverings (Claims 2a and 2b)

Plaintiff's first two equal protection claims are based on policies that treat male and female inmates differently. Specifically, Estes alleges that females at other VDOC facilities are permitted to purchase more head coverings (three as opposed to one), and to wear head coverings more often, than males at his facility. Defendants assert that Claims 2a and 2b fail to state claims for which relief can be granted, in part because they are lacking in detail.

As to the lack of detail in the complaint, Estes's complaint does not identify what head coverings are supposedly permitted to be worn by female inmates or when. As with his other claims, though, he does provide some of that missing information in his opposition. (*See generally* Opp'n 27–32.) In particular, he explains that females inmates are permitted to wear a "hijab," which he describes as completely covering the outside of the head, leaving only the face exposed. (*Id.* at 31.) He contrasts that with the yarmulke he wants to wear at all times, which he describes as "4 to 5 inches in diameter" and sitting "on the back of the head." (*Id.* at 31–32.) His complaint, however, is lacking even that most basic comparative information.

Defendants also seek dismissal on more substantive grounds, arguing that Estes has failed to allege sufficient facts "to overcome the presumption of reasonableness applied to prison policies." (Mem. Supp. Mot. Dismiss 13 (quoting *Veney*, 293 F.3d at 732).) Defendants also properly point out that the *Veney* court, in affirming the dismissal of an equal protection challenge to a prison policy that discriminated on the basis of gender, noted legitimate differences between the security needs of male and female inmates that can justify differential treatment. *Veney*, 293 F.3d at 734 (recognizing that "each gender faces unique safety and security concerns of various degrees" and that "it is a well-documented reality that institutions for females generally are much less violent than those for males"); *see also Washington v. McAuliffe*, No. 7:16-CV-00476, 2019 WL 1371859, at *11 (W.D. Va. Mar. 26, 2019) (rejecting equal protection claim based on differences in grooming policy for men and women in light of testimony that men are more inclined to present security risks than women and that, although women fight, they rarely do so with weapons); *Ashann-Ra v. Commonwealth*, 112 F. Supp. 2d 559, 571–72 (W.D. Va. 2000) (same and citing to defendants' assertions that "female inmates are not as prone to be violent [or] to hide weapons in their hair"); *DeBlasio v. Johnson*, 128 F. Supp.

13

2d 315, 328 (E.D. Va. 2000) (same), *aff'd*, 13 F. App'x 96 (4th Cir. 2001) (affirming "on the reasoning of the district court").

In reviewing the complaint (and especially contrasting it with the additional information contained in his opposition, the court concludes that Claims 2a and 2b—as they are currently pled—lack sufficient factual material to state viable claims. And it may well be that Estes, like the plaintiffs in the above-cited cases, will ultimately be unable to succeed on his claims. But his opposition at least raises questions concerning the differences in the headwear permitted among the sexes, and the court cannot say "that no amendment could cure the defects" in these claims, so as to warrant a dismissal with prejudice. *See Goode v. Central Va. Legal Aid Society, Inc.*, 807 F.3d 619, 623 (4th Cir. 2015) (citation omitted). Instead, the court will grant the motion to dismiss these claims without prejudice and will grant Estes leave to amend.

### 4. Equal Protection Claims Based on Differences in Treatment of Jewish Offenders and Offenders of Other Religions (Claims 2e and 2f)

Claims 2e and 2f allege that River North changes its schedule to accommodate the holy days of other religions (such as Muslims during Ramadan), but refuses to do so for Jews, and that it permits certain individualized donations to offenders of other faiths, but not to Jewish offenders. Defendants seek dismissal of these two claims only on the ground that they fail to allege personal involvement; defendants do not contend that they otherwise fail to state a claim. Accordingly, because of Estes's failure to identify any actions by any specific defendants, the court will dismiss these claims, but without prejudice to Estes's ability to amend them to name which specific defendants are responsible for the decisions he challenges.

To summarize, then, all of Estes's remaining equal protection claims will be dismissed without prejudice, and he will be given an opportunity to file an amended complaint.

### D. Other Pending Motions

Also pending before the court are three motions filed by Estes: two motions for preliminary injunction (Dkt. No. 24, 26) and a motion to compel (Dkt. No. 25). The former both ask that the court enjoin defendants from forbidding him from wearing his yarmulke or tzitzit. (Dkt. Nos. 24, 26.) Defendants filed a response to the motion for preliminary injunction (Dkt. No. 27), noting many of the same arguments raised in their motion to dismiss, which the court has now ruled upon.

Since that response was filed, however, Estes has submitted additional documents and evidence related to his requests for injunctive relief. In some of them, he alleges that the policies regarding head coverings have changed subsequent to both his complaint and defendants' response to his motions for preliminary injunction. (*See, e.g.*, Dkt. Nos. 35, 38 (referencing a new policy at River North effective October 2019).) Moreover, in general, the documents related to injunctive relief reflect changing information about the policy regarding the wearing of his yarmulke and tzitzit. In light of: (1) the lack of specifics in Estes's current complaint as to the precise contours of the policy, which makes it difficult to evaluate his likelihood of success, (one of the factors relevant to the propriety of preliminary injunctive relief); (2) the changing descriptions of the "current" policy as described in Estes's later filings; and (3) the lack of a substantive response by defendants to Estes's most current allegations, the court will deny his motions for preliminary injunction without prejudice.

If Estes still seeks injunctive relief, he may file a new motion for preliminary injunction not later than fourteen days after entry of the order accompanying this opinion. Any such motion should set forth with specificity what VDOC's current policy is with respect to the wearing of his religious garments, and describe with specific how that policy is currently being applied to him. Defendants shall respond not later than fourteen days after service of any such motion.

Lastly, plaintiff has filed a letter docketed as a "motion to compel." (Dkt. No. 25). In it, he asks that the court compel defendants to reply to his response to the motion to dismiss. In light of the court's ruling herein, that motion will be denied as moot.

III.  CONCLUSION

For the foregoing reasons, defendant's motion to dismiss will be granted in part and denied in part. The claims and defendants Estes has voluntarily dismissed will be dismissed. Of the remaining claims, all of the claims are dismissed except Claim 1a, the RLUIPA claim concerning the yarmulke and tzitzit, which will proceed against Clarke only. The remaining claims (Claims 1b, 1e, 2a, 2b, 2e, and 2f) will be dismissed without prejudice. Estes will be permitted to file an amended complaint with additional detail as to those claims within fourteen days.

Estes's motions for preliminary injunctions will be denied without prejudice, and any renewed motion may be filed within fourteen days, with defendants' response due fourteen days after service. Estes's motion to compel will be denied as moot.

An appropriate order will be entered.

Entered: March 26, 2020.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge